IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:17-CV-7-D

| | |
|---|---|
| TERRY LEE SHINABERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TOWN OF MURFREESBORO, N.C., ) | |
| BOBBIE J. BARMER, HERTFORD ) | |
| COUNTY, N.C., MICHAEL P. HINTON, ) | |
| REVELLE & LEE, LLP, GUILFORD ) | |
| COUNTY, N.C., HUMANE SOCIETY ) | |
| OF THE UNITED STATES, JOANN ) | |
| JONES, and HERTFORD COUNTY ) | |
| SHERIFF'S OFFICE, ) | |
| ) | |
| Defendants. ) | |

On October 17, 2017, Terry Lee Shinaberry ("Shinaberry" or "plaintiff") filed an amended complaint with eleven causes of action concerning an alleged conspiracy to deprive Shinaberry of "prime Australian Shepherd dogs which he bred as a hobby." See [D.E. 56]. Shinaberry names as defendants the Town of Murfreesboro, North Carolina ("Town"); Bobbie J. Barmer ("Barmer"), an animal control officer with the Hertford County Sheriff's office; the County of Hertford, North Carolina ("County"); Michael P. Hinton ("Hinton"), an attorney who purportedly represented the Town; Revelle & Lee, LLP ("Firm"), a law firm which employed Hinton; the Humane Society of the United States ("HSUS"); and JoAnn Jones ("Jones"), an employee of the Hertford County Sheriff's office. See Am. Compl. [D.E. 56] ¶¶ 2–9; Answer [D.E. 59] ¶¶ 2–9.

On October 31, 2017, the Town moved to dismiss the amended complaint for failure to state a claim [D.E. 60] and filed a memorandum in support [D.E. 61]. On November 14, 2017, HSUS

moved to dismiss the amended complaint for failure to state a claim [D.E. 63] and filed a memorandum in support [D.E. 64]. See Fed. R. Civ. P. 12(b)(6). On November 28, 2017, Shinaberry responded in opposition to HSUS's motion to dismiss [D.E. 65]. On December 9, 2017, HSUS replied [D.E. 66]. As explained below, the court grants the motion to dismiss and dismisses the Town and HSUS from this action.

I.

Shinaberry lives near Murfreesboro, North Carolina, but outside the Town's incorporated boundaries. Shinaberry alleges that the Town is liable to him under 42 U.S.C. § 1983 for "Denial of Due Process (Right to Counsel)," and under North Carolina law for "Negligent Infliction of Emotional Distress," and "Civil Conspiracy." See Am. Compl. ¶¶ 53–57, 76–79, 90–94; [D.E. 61] 5. Shinaberry alleges that HSUS is liable to him under section 1983 for "Wrongful Seizure" and a "Monell Claim," and under North Carolina law for "Negligent Infliction of Emotional Distress," "Invasion of Privacy," "Conversion," "Civil Conspiracy," and "Trespass Under Color of Law." See Am. Compl. ¶¶ 47–52, 70–75, 76–79, 80–84, 85–89, 90–94, 99–102; [D.E. 64].

Shinaberry's amended complaint alleges that the various defendants conspired and colluded to deprive him of his property and his rights. See Am. Compl. ¶¶ 16–102. On March 10, 2014, the Hertford County Sheriff's office cited Shinaberry for misdemeanor animal cruelty regarding several Australian Shepherd dogs. See id. ¶¶ 17–18. On March 21, 2014, Shinaberry appeared before a magistrate in Hertford County District Court where "he was advised of the charges against him and an attorney was appointed to defend him against the charge." Id. ¶ 20. After the hearing, Shinaberry was "taken . . . into a private room at the courthouse, where he met with ACO Barmer, Assistant District Attorney Kinsey . . . and . . . Hinton." Id. ¶¶ 20–21. Nobody asked Shinaberry about his counsel, and Barmer, Kinsey, and Hinton "pressured and threatened" Shinaberry "with the loss of

2

his dogs as a result of the charge and potential future charges." Id. ¶¶ 22–23. Shinaberry contends that Barmer, Kinsey, and Hinton pressured him to sign a document "which [he] understood to be a plea agreement to dismiss the charge and any future charges" styled as a "Voluntary Transfer of Ownership of Animals" and which "alleged that he was unable to provide continuing adequate care for '50 plus' dogs at his residence." Id. ¶¶ 24–25. This agreement purportedly "allowed for Hertford County Animal Control and Hertford County Sheriff's deputies to ... investigat[e] the condition of these dogs and [remove] these dogs ... [and for] transfer of the dogs to HSUS for 'adoption' or euthanization." Id. ¶ 26. Shinaberry signed the agreement "without any benefit or assistance" of counsel. Id. ¶ 27. When Shinaberry surrendered the dogs, he "revoked his permission for law enforcement to enter onto the premises" and instead brought the dogs to the officers one at a time. Id ¶ 30. Barmer then "secured a search warrant ... to take possession of the dogs" and used the signed agreement as evidence of probable cause. Id. ¶ 31. After obtaining the search warrant, Barmer and several individuals affiliated with HSUS retrieved the dogs. See id. ¶ 32. Shinaberry alleges that the defendants seized the dogs for the "commercial benefit [of] Jones and HSUS." Id. ¶ 41.

II.

The Town moves to dismiss Shinaberry's claims against the Town and argues (1) that the amended complaint fails to allege involvement by any person representing the Town, (2) that the statute of limitations bars claims arising from conduct before March 21, 2014, and (3) that Shinaberry has failed to plausibly allege negligent infliction of emotional distress and civil conspiracy. See [D.E. 61] 5–16.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544,

3

554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

Shinaberry alleges a cause of action against the Town under 42 U.S.C. § 1983 for a denial of his due process rights. See Am. Compl. ¶¶ 53–57. Shinaberry claims that the Town "interrogated and negotiated a plea with [him] without his counsel present" and thereby "deprived [him of] procedural due process rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution." Id. ¶¶ 54–55. According to Shinaberry, Hinton was the "Town Attorney" and was "acting under the color of [his] authority as an . . . agent of the . . . Town." Id. ¶¶ 4, 57.

Liability under section 1983 requires that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) (quotation omitted); see Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Contrary to the allegations in the amended complaint, Hinton was not "the Town Attorney" in March 2014. Rather, public records demonstrate that W. Hugh "Buddy" Jones Jr. was the Town Attorney at that time, and

4

that Hinton has never been the Town Attorney. See [D.E. 61] 6; [D.E. 40-1] 1, 3, 7. Moreover, this court may take judicial notice of such public records in considering the Town's motion to dismiss. See Fed. R. Evid. 201(b); Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004); [D.E. 40-1]. Because the amended complaint does not allege that any party who actually represented the Town was present when Shinaberry signed the agreement that he alleges violated due process, Shinaberry has not stated a section 1983 claim against the Town.

Alternatively, even if Shinaberry plausibly alleged that Hinton was a Town employee, Shinaberry's section 1983 claim against the Town would still fail. Municipal entities cannot be held liable under section 1983 solely because they employed a tortfeasor. Rather, when a municipal entity is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690–94 (1978); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). A violation results from a municipal entity's "policy or custom" if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690–91, 694; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988).

Not every municipal official's action or inaction represents municipal policy. Rather, the inquiry focuses on whether the municipal official possessed final policymaking authority under state law concerning the action or inaction. See, e.g., McMillian v. Monroe Cty., 520 U.S. 781, 785–86 (1997); Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); Riddick v. Sch. Bd., 238 F.3d 518,

5

523 (4th Cir. 2000). Furthermore, even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick, 238 F.3d at 524. Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404 (emphasis omitted); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Hence, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404. Thus, deliberate indifference and causation are separate requirements. See id.

A single act of a municipal official may result in municipal liability if that official has final policymaking authority under state law concerning the act. See Pembaur, 475 U.S. at 481; Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003); Riddick, 238 F.3d at 523. An official has final policymaking authority if, under state law, the official has final authority "to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." Riddick, 238 F.3d at 523 (quotation omitted); see McMillian,

6

520 U.S. at 785–86; Lytle, 326 F.3d at 472; Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987).

"[A] municipality is only liable under section 1983 if it causes [a constitutional] deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999); see, e.g., Brown, 520 U.S. at 403–04. This requirement limits municipal liability under section 1983 to those actions for which the municipality is actually responsible by distinguishing between acts attributable to the municipality and acts attributable only to municipal employees. See, e.g., Brown, 520 U.S. at 403–04; Riddick, 238 F.3d at 523. Therefore, a municipality may not be found liable under section 1983 based on a theory of respondeat superior or simply for employing a tortfeasor. See, e.g., Brown, 520 U.S. at 403.

Shinaberry's amended complaint does not plausibly allege that Hinton's alleged conduct resulted from any Town policy or that Hinton had final policymaking authority. See Am Compl. ¶¶ 53–57. Shinaberry's amended complaint also does not plausibly allege deliberate indifference or causation. Thus, Shinaberry's section 1983 claim against the Town fails.

To the extent that any section 1983 claim against the Town arises from Shinaberry's interaction with Town police officer, W.C. Barmer, on March 10, 2014, the statute of limitations bars the claim. Cf. Am. Compl. ¶ 18; [D.E. 61] 8. A motion to dismiss under Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Nevertheless, a district court may reach the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." Id. (quotation, alteration, and emphasis omitted). "A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading, rendering dismissal appropriate." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir.

7

1996) (quotation omitted). Thus, failure to comply with the statute of limitations is "a recognized basis for dismissal" under Rule 12(b)(6). Evans v. Trinity Indus., Inc., 137 F. Supp. 3d 877, 881 (E.D. Va. 2015); see Brooks, 85 F.3d at 181; West v. ITT Cont'l Baking Co., 683 F.2d 845, 846 (4th Cir. 1982).

Because no federal statute of limitations applies to actions under section 1983, "the applicable provision limiting the time in which an action under § 1983 must be brought [is] borrowed from the analogous state statute of limitations." Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991) (alteration and quotation omitted). The appropriate statute of limitations under North Carolina law is three years, and begins to run when plaintiff "knows or has reason to know of the injury which is the basis of the action." Id. at 1162 (quotation omitted); see N.C. Gen. Stat. § 1-52.

On March 21, 2017, Shinaberry filed his complaint. See Compl. [D.E. 1]. Shinaberry's amended complaint alleges that his interaction with Officer W.C. Barmer occurred on March 10, 2014, more than three years before Shinaberry filed the complaint. See Am. Compl. ¶ 18. Accordingly, any claim against the Town based on Officer W.C. Barmer's alleged conduct is untimely. Moreover, and in any event, Shinaberry's amended complaint does not plausibly allege that Officer W.C. Barmer's alleged conduct resulted from any Town policy or that Officer W.C. Barmer had final policymaking authority. See Am Compl. ¶¶ 53–57. Shinaberry's amended complaint also does not plausibly allege deliberate indifference or causation. Thus, Shinaberry's section 1983 claim against the Town fails.

Shinaberry alleges negligent infliction of emotional distress ("NIED") against the Town and the other defendants. See Am. Compl. ¶¶ 76–79. To state a NIED claim, a plaintiff must plausibly allege (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such

8

conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. See, e.g., Andersen v. Baccus, 335 N.C. 526, 531, 439 S.E.2d 136, 139 (1994); Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "Allegations of intentional conduct . . . even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." Horne v. Cumberland Cty. Hosp. Sys., Inc., 228 N.C. App. 142, 149, 746 S.E.2d 13, 19 (2013); see Mitchell v. Lydall, Inc., 16 F.3d 410, 1994 WL 38703, at *3 (4th Cir. 1994) (per curiam) (unpublished table decision); Roach v. Hilton World–Wide, Inc., No. 5:12–CV–309–D, 2013 WL 556195, at *4 (E.D.N.C. Feb. 12, 2013) (unpublished), aff'd, 533 F. App'x 341 (4th Cir. 2013) (per curiam) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 545–46 (E.D.N.C. 2008).

Shinaberry's amended complaint alleges intentional conduct repackaged and relabeled as negligence. Shinaberry alleges that defendants "negligently took forcible possession of Mr. Shinaberry's dogs and invaded his privacy" which "the defendants either knew or, . . . should have known" was unlawful. Am. Compl. ¶ 77; see Am. Compl. ¶ 33. Although paragraph 77 of the amended complaint uses the word "negligently," merely reciting a label or legal conclusion is insufficient to plausibly state a claim. Twombly, 550 U.S. at 555; see Francis v. Giacomelli, 588 F. 3d 186, 193 (4th Cir. 2009). The amended complaint alleges that the Town and other defendants acted intentionally when purportedly scheming to deprive Shinaberry of his dogs, including an allegation that the defendants collectively worked "at the behest and urging of Jones and the HSUS" to benefit Jones and HSUS commercially. Am. Compl. ¶ 41; see id. ¶ 46. The amended complaint also alleges that defendants conspired to bring members of the news media to Shinaberry's property, thereby invading his privacy. See id. ¶¶ 29, 77, 82. Thus, the amended complaint alleges intentional acts, not negligent acts, and the court dismisses Shinaberry's NIED claim against all defendants.

9

Alternatively, Shinaberry has not pled with any specificity the negligent conduct of each specified defendant. A complaint "must identify specific acts or conduct taken by each defendant to state a claim." Boykin Anchor Co. v. AT&T Corp., No. 5:10–CV–591–FL, 2011 WL 1456388, *4 (E.D.N.C. April 14, 2011) (unpublished); see Evans v. Chalmers, 703 F.3d 636, 661 (4th Cir. 2012); Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008). Shinaberry's amended complaint generally alleges an NIED claim against "all defendants," but does not "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation and alteration omitted). Thus, Shinaberry's NIED claim against all defendants fails.

Finally, Shinaberry alleges a civil conspiracy claim against the Town. As a matter of North Carolina law, a municipality can not be a party to a conspiracy. See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 784–85 (M.D.N.C. 2011); Houpe v. City of Statesville, 128 N.C. App. 334, 352, 497 S.E.2d 82, 93–94 (1998) ("[A] municipal corporation, which is limited by law to the purposes and objects of its creation cannot in its sovereign or municipal capacity be a party to a conspiracy." (alteration omitted)). Thus, Shinaberry's civil conspiracy claim against the Town fails.

### III.

Shinaberry's amended complaint contains several claims against the Humane Society of the United States ("HSUS"). First, Shinaberry seeks relief against HSUS under section 1983 for "wrongful seizure." See Am. Compl. ¶¶ 47–52, 70–75.

Generally, private parties are not "state actors" and cannot be liable under section 1983. See, e.g., DeBauche v. Trani, 191 F.3d 499, 506–07 (4th Cir. 1999). The Supreme Court and Fourth Circuit have

> recognized four exclusive circumstances under which a private party can be deemed

10

> to be a state actor: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

Id. at 507; see Andrews v. Fed. Home Loan Bank of Atlanta, 998 F.2d 214, 217 (4th Cir. 1993). Shinaberry contends that the Town evaded a clear constitutional duty to preserve evidence in a criminal case through delegation to HSUS and that the Town delegated a traditionally exclusive public function to HSUS. See [D.E. 65] 4–6.

As for the Town allegedly evading its constitutional duty, Shinaberry contends that the Town evaded its constitutional duty to preserve evidence in a criminal case by transferring ownership of the dogs to HSUS, which then placed the dogs in adoptive homes. See [D.E. 65] 5; Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The State, however, dismissed the charge for which the dogs were evidence. See Am. Compl. ¶¶ 34–37. Moreover, Shinaberry has not plausibly alleged that the Town requested HSUS's assistance in order to avoid a duty to preserve evidence in a criminal case.

Shinaberry also alleges that the Town delegated an exclusively public function to HSUS because HSUS "assist[ed] law enforcement in ... prosecution of animal cruelty cases." [D.E. 65] 6. The delegation exception is "very narrow" and includes actions such as "the operation of a town." DeBauche, 191 F.3d at 508. Law enforcement certainly is a traditionally and exclusively public function, but merely receiving assistance in placing seized dogs into appropriate adoptive homes does not mean that the Town delegated its law enforcement authority to HSUS. See Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 217–218 (4th Cir. 1993). Thus, HSUS is not a state actor and cannot be liable under section 1983. Accordingly, the court dismisses Shinaberry's section 1983 claims against HSUS.

Shinaberry also alleges "invasion of privacy" against HSUS concerning the entry into his property to remove the dogs, and for "arranging for news media to appear during the ... search." See Am. Compl. ¶¶ 80–84. "While other states have recognized an action for invasion of privacy based on an illegal search by a private individual . . . North Carolina has not." Morrow v. Kings Dep't Stores, Inc., 57 N.C. App. 13, 23, 290 S.E.2d 732, 738 (1982) (citations omitted). Because this claim does not exist under North Carolina law, the claim fails.

Shinaberry also alleges a conversion claim and a trespass to real property claim against HSUS. See Am. Compl. ¶¶ 85–89, 99–102. Under North Carolina law, the elements of a conversion claim are "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." Day v. Rasmussen, 177 N.C. App. 759, 762, 629 S.E.2d 912, 914 (2006). Under North Carolina law, the elements of a trespass to real property claim are "(1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass." Broughton v. McClatchy Newspapers, Inc., 161 N.C. App. 20, 32, 588 S.E.2d 20, 29 (2003).

Consent is a complete defense to a conversion claim and a trespass to property claim. See, e.g., Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 517 (4th Cir. 1999); Miller v. Brooks, 123 N.C. App. 20, 27–28, 472 S.E.2d 350, 355 (1996). Shinaberry consented to surrender the dogs. See Am. Compl. ¶¶ 27, 30. In fact, he physically handed the dogs to county officials. See id. Shinaberry's consent defeats his conversion claim and trespass to real property claim against HSUS.

As for Shinaberry's civil conspiracy claim against HSUS, the elements of a civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful

12

act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Strickland v. Hedrick, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quotation omitted); see also State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008); Privette v. Univ. of N.C. at Chapel Hill, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989). North Carolina law requires an overt act in furtherance of the conspiracy. See Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005).

Shinaberry asserts that all defendants "entered into an agreement that included a plan or intention to act in concert . . . [to take his] dogs and to humiliate him with false publicity." Am. Compl. ¶ 91. The amended complaint does not, however, plausibly allege any facts which support the existence of any form of unlawful agreement between HSUS and any other defendant. Thus, the civil conspiracy claim against HSUS fails. See, e.g., Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678–79.

Finally, Shinaberry alleges a NIED claim against HSUS. See Am. Compl. ¶¶ 76–79. Shinaberry's NIED claim against HSUS fails for the same reasons that his NIED claim failed against the Town and all other defendants.

IV.

In sum, the court GRANTS the motions to dismiss [D.E. 60, 63], and DISMISSES the Town of Murfreesboro and the Humane Society of the United States as defendants, and DISMISSES plaintiff's negligent infliction of emotional distress claim and civil conspiracy claim against all defendants.

SO ORDERED. This 16 day of April 2018.

JAMES C. DEVER III
Chief United States District Judge